## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BEVERLY GROSS AND KRISTA BIEHL, *individually and on behalf of all others similarly situated,* | |
| Plaintiffs, | Civil Action No. 3:19-cv-01520-KAD |
| v. | |
| BLUECHIP FINANCIAL d/b/a SPOTLOAN, *et al.*, | December 16, 2019 |
| Defendants. | |

**DEFENDANT BLUECHIP FINANCIAL'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION
AND STAY PROCEEDINGS HEREIN**

ORAL ARGUMENT REQUESTED

Defendant BlueChip Financial dba Spotloan respectfully submits this memorandum of law in support of its Motion to Compel Arbitration and to Stay Proceedings Herein.

## I.     INTRODUCTION

By the instant motion, defendant BlueChip Financial dba Spotloan ("BlueChip") seeks to compel arbitration on an individual (*i.e.*, non-class, non-consolidated) basis of the purported claims asserted in this action by plaintiffs Beverly Gross and Krista Biehl (collectively, "Plaintiffs").  Despite each plaintiff expressly agreeing in writing, one on multiple occasions, to arbitrate any disputes with BlueChip on an individual basis, Plaintiffs improperly filed this action, in which they seek to assert usury and other claims on behalf of multiple putative classes. As detailed below, it is quite well-established that Plaintiffs' agreements to arbitrate on an individual basis are enforceable.  BlueChip therefore requests that the Court compel them to arbitrate their claims, and stay this action pending completion of the arbitration.[1]

## II.     FACTUAL BACKGROUND

### A.     Plaintiffs' Agreements with BlueChip

As expressly conceded in the Complaint, Plaintiffs entered into loan agreements with BlueChip.  (Dkt. No. 1 ("Compl.") ¶¶ 67-84).  Copies of these agreements are attached to and authenticated by the accompanying Declaration of Sam Spratt ("Spratt Decl.").  Plaintiff Beverly Gross entered into a loan agreement with BlueChip on November 7, 2017.  (Compl. ¶ 67-73; Spratt Decl., Ex. A).  Plaintiff Krista Biehl entered into separate loan agreements with BlueChip on November 14, 2017 and December 28, 2018.  (Compl. ¶¶ 74-82; Spratt Decl., Ex. C).  Each of these agreements contains prominent arbitration provisions (collectively, the "Arbitration

---

[1] While not relevant to the arbitration issue before this Court, BlueChip notes that the Complaint is replete with completely false and irresponsible allegations regarding the nature of its lending program and Plaintiffs' dealings with BlueChip.  BlueChip is not a sham; it is a bona fide lender providing good jobs on a reservation with an unemployment rate above 60%.

Clause"). The agreements all state:

> **Disputes.** Any dispute under this Agreement will be decided under the terms set forth in the Binding Arbitration and Jury Trial Waiver below unless you decide to opt out (see "Other Options" below).

(Spratt Decl., Ex. A-4).[2] They each contain a lengthy section entitled "Binding Arbitration Clause and Jury Trial Waiver," which provides that:

> By accepting this Clause, you, related third parties, and we, waive the right to go to court to have our Dispute heard. All parties forgo jury trials and other court proceedings that would decide the Dispute.

(*Id.*, Ex. A-5). The Arbitration Clause defines "dispute" as follows:

> In this Clause, the word "Disputes" has the broadest possible meaning. This Clause governs all Disputes involving the parties. This includes all claims even indirectly related to your application and agreements with us. This includes claims related to information you previously gave us. It includes all past agreements. It includes extensions, renewals, refinancings, or payment plans. It includes claims related to collections, privacy, and customer information. It includes claims related to setting aside this Clause. It includes claims about the Clause's validity and scope. It includes claims about whether to arbitrate.

(*Id.*). The Arbitration Clause further provides that:

> You waive your rights to:
>
> 1. Have juries solve Disputes.
>
> 2. Have any court solve Disputes.
>
> 3. Serve as a private attorney general or in a representative capacity.
>
> 4. Be in a class action.

(*Id.*). The Arbitration Clause further states that:

> COURTS AND ARBITERS WON'T ALLOW CLASS ACTIONS. You waive your rights to be in a class action, as a representative and a member. Only individual arbitrations will solve Disputes. You waive your right to have representative claims.

(*Id.*). Each of the agreements provides that Plaintiffs may select AAA or JAMS to arbitrate the

---

[2] For ease of reference, this memorandum cites to Gross's loan agreement (Spratt Decl., Ex. A) since the arbitration clauses in Plaintiffs' loan agreements are materially identical.

2

dispute, and that the parties also may "agree in writing to a local attorney, retired judge, or Arbiter in good standing with an arbitration group. The Arbiter must arbitrate under AAA or JAMS consumer rules." (*Id.*, Ex. A-6). They further provide that BlueChip will advance the Arbitration Fees at Plaintiffs' request. (*Id.*). The Arbitration Clause further provides that:

> This transaction involves interstate commerce. Thus, the FAA governs. If a court finds the FAA doesn't apply, and the finding can't be appealed, then your state's law governs. The Arbiter must apply substantive law consistent with the FAA.

(*Id.*, Ex. A-5)

Notably, the Arbitration Clause was not mandatory. Each of the loan agreements gave Plaintiffs a 60-day window to opt out of arbitration by writing to BlueChip, and also allowed them to request a loan agreement without an arbitration clause. (*Id.*, ¶ 7 & Ex. A-7). However, Plaintiffs neither opted out of arbitration nor asked for a loan agreement without an arbitration clause. (*Id.*, ¶ 8)

With respect to governing law, the loan agreements all provide:

> **Governing Law.** Spotloan is organized under the laws of the Turtle Mountain Band of Chippewa Indians (the "Tribe"). Your Loan Agreement becomes a binding contract with us when we accept it at our offices on the Turtle Mountain Indian Reservation. By signing this Loan Agreement, you agree that the laws of the Tribe will apply to the Loan Agreement, and understand that United States state law does not apply to the Loan Agreement in any way. You also agree to be subject to the jurisdiction of the Tribe.

(*Id.*, Ex. A-4)

**B.     The Action**

Despite having agreed to arbitrate any disputes with or involving BlueChip and related third parties, Plaintiffs commenced this action on September 26, 2019 by filing a putative Class Action Complaint in this Court, naming as defendants Jamie Azure, Lynn Gorneau, Stuart LaFountain, Jim Baker, Nathan Davis, Ron Trottier, LoAnn Jerome, Carson Belgarde, and Chad Counts, (collectively, the "Tribal Council") and BlueChip. (Compl.). The Complaint purports to

assert eight causes of action for: usury, unjust enrichment, conspiracy, and declaratory judgment under the laws of Florida and Connecticut; and purported violations of the federal civil RICO statute. (Compl. ¶¶ 94-152). All of these claims are based directly or indirectly on the allegations that the loan agreements violate state usury laws. (*See, e.g.*, Compl. ¶ 100 (alleging that "[a]ll of the loans made to the RICO class members and collected by BlueChip included an interest rate far in excess of twice the enforceable rates in their states")). Plaintiffs purport to assert the state law claims on behalf of putative classes of residents of the aforementioned states, and the RICO claims on behalf of a nationwide class. (Compl. ¶¶ 85-87).

### III.  ARGUMENT

**A.  Plaintiffs' Claims Must Be Arbitrated On An Individual Basis**

The United States Supreme Court has made absolutely clear that arbitration agreements must be enforced as written pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"). *See, e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011). Section 2 of the FAA mandates that arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006). The United States Supreme Court also has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g., Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). Here, the FAA plainly applies because the loan agreements were made between Plaintiffs, who allegedly resided in Connecticut and Florida at the time that they entered into the loan agreements (Compl. ¶ 70, 77, 81), and

BlueChip, which is located on the Turtle Mountain Indian Reservation in Belcourt, North Dakota. (Spratt Decl. ¶ 1; *see also* Compl. ¶ 20). Indeed, the loan agreements expressly recite that "[t]his transaction involves interstate commerce. Thus, the FAA governs." (Spratt Decl., Ex. A-5).

The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987) (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'") (citations omitted). Thus, as repeatedly confirmed by the United States Supreme Court, the FAA "requires courts to enforce the bargain of the parties to arbitrate" and "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21-22, 132 S. Ct. 23, 181 L. Ed. 2d 323 (2011) (per curiam) (citations omitted, emphasis in original); *see also Concepcion*, 563 U.S. at 344 (confirming that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"); *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203, 182 L. Ed. 2d 42 (2012); *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669, 181 L. Ed. 2d 586 (2012); *McMahan Secs. Co. L.P. v. Forum Capital Markets L.P.*, 35 F.3d 82, 85-86 (2d Cir. 1994); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997).

"When a party to an arbitration agreement seeks to compel arbitration, a court must enforce the agreement if the dispute at issue is within the scope of a valid arbitration agreement."

5

*Mattox v. Comcast Cable Commc'ns Mgmt., LLC*, No. 3:18-cv-00119-JAM, 2018 WL 8367498, at *1 (D. Conn. July 15, 2018) (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)). In the Second Circuit, courts "ordinarily answer four questions in this inquiry: (1) whether the parties agreed to arbitrate; (2) the 'scope' of the arbitration agreement; (3) whether the plaintiff's federal statutory claims are 'nonarbitrable'; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221-22 (2d Cir. 2019) (quoting *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)); *Graham v. BMO Harris Bank, N.A.*, No. 3:13CV1460 WWE, 2014 WL 4090548, at *4 (D. Conn. July 16, 2014) (enforcing arbitration provisions). The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue, a burden that cannot be met by Plaintiffs on the facts here. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).

### 1. The Arbitration Clause Contained In The Loan Agreements Is Valid And Enforceable

While the FAA exclusively governs the enforceability of the Arbitration Clause, state or tribal law governs the determination of whether a valid agreement to arbitrate exists. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

The Second Circuit has observed that "[t]he validity of a contractual choice-of-law clause is a threshold question that must be decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses." *Fin. One.*

*Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005). "The threshold choice of law issue in Connecticut, as it is elsewhere, is whether there is an outcome-determinative conflict between applicable laws of the states with a potential interest in the case. If not, there is no need to perform a choice of law analysis, and the law common to the jurisdiction should be applied." *Cohen v. Roll-A-Cover, LLC*, 131 Conn. App. 443, 465-66, 27 A.3d 1 (2011); *Discover Prop. & Cas. Ins. Co. v. Tetco, Inc.*, No. 3:12CV473 JBA, 2014 WL 685367, at *3 (D. Conn. Feb. 19, 2014). Here, Plaintiffs' loan agreements with BlueChip are expressly governed by the law of the Turtle Mountain Band of Chippewa Indians (the "Tribe"). (*See* Spratt Decl., Ex. A-4). However, the Court need not engage in a choice-of-law analysis because Plaintiffs entered into a valid and enforceable arbitration agreement under both tribal law and laws of Connecticut and Florida.

As in every U.S. state, the law of the Tribe provides that a contract is formed by offer and acceptance. *See, e.g., Berube v. Belcourt Sch. Dist. No. 7*, slip op. at 118 (Turtle Mountain Chippewa Tribal Ct. App. Sept. 11, 1990); Appendix of Tribal Authorities ("AA"), Ex. A-12. Like federal law, the law of the Tribe strongly endorses arbitration of disputes. *See* Turtle Mountain Tribal Code ("Tribal Code") § 43.0707 ("The consumer and the licensee . . . may agree to arbitration in accordance with the terms of the loan agreement or note. The Federal Arbitration Act and the U.S. Supreme Court decisions interpreting it shall apply to any dispute between a Debtor and the Creditor.").[3] Moreover, under the Tribal Code, "[a] voluntary acceptance of the benefit of a transaction is equivalent to consent to all the obligations arising from it so far as the facts are known, or ought to be known, to the party accepting." Tribal Code

---

[3] This is the version of Chapter 43 of the Tribal Code in effect when most Plaintiffs entered into their first loan agreement with BlueChip. *See* AA, Ex. B-10. The current version of that chapter, enacted on January 12, 2018, also expressly endorses arbitration agreements. *See* AA, Ex. C-8 at 43.4.4(b)(1).

7

§ 7.0308.  Here, there is no dispute that (1) Plaintiffs entered into loan agreements with BlueChip; (2) the loan agreements contain the Arbitration Clause; and (3) BlueChip provided the loan funds to Plaintiffs.  (Spratt Decl., ¶¶ 5-6 & Exs. A-D; Compl. ¶¶ 67, 71-73, 74, 78-82).  Thus, under tribal law, Plaintiffs agreed to arbitrate.

Like tribal law, the laws of Connecticut and Florida agree that "[t]he essential terms of a valid contract are an offer, acceptance of that offer, and consideration." *Chiulli v. Chiulli*, 161 Conn. App. 638, 647, 127 A.3d 1146 (2015); *Pier 1 Cruise Experts v. Revelex Corp.*, 929 F.3d 1334, 1347 (11th Cir. 2019) (Florida).  Contract formation requires mutual assent of the parties, which may be inferred from the acts and conduct of the parties.  *Saint Bernard Sch. of Montville, Inc. v. Bank of Am.*, 312 Conn. 811, 830-31, 95 A.3d 1063 (2014); *see also Rabon v. Inn of Lake City, Inc.*, 693 So. 2d 1126, 1131 (Fla. 1997).  A party's signature on a contract is objective evidence of the party's intent to be bound by that contract.  *Rowe v. Affordable Motors, Inc.*, No. 3:17-CV-1592 (VAB), 2018 WL 6258606, at *4 (D. Conn. Nov. 30, 2018); *Mandell v. Fortenberry*, 290 So. 2d 3, 7 (Fla. 1974).  Furthermore, each state's public policy favors arbitration.  *Roe v. Amica Mut. Ins. Co.*, 533 So. 2d 279, 281 (Fla. 1988) ("arbitration is a favored means of dispute resolution and [Florida] courts indulge every reasonable presumption to uphold proceedings resulting in an award."); *Nussbaum v. Kimberly Timbers, Ltd.*, 271 Conn. 65, 71, 856 A.2d 364 (Conn. 2004) ("Connecticut has adopted a clear public policy in favor of arbitrating disputes.") (citing Conn. Gen. Stat. Ann. § 52-408).

As noted above, there is no dispute that Plaintiffs entered into loan agreements containing the Arbitration Clause, or that Plaintiffs contracted for and received money from BlueChip as a result of those loan agreements.  (Spratt Decl., ¶¶ 5-6 & Exs. A-D; Compl. ¶¶ 67, 71-73, 74, 78-82).  The plain-English Arbitration Clause is clear and conspicuous, spanning two-and-a-half

pages of each loan agreement. Accordingly, even if the laws Connecticut and Florida applied here, the Arbitration Clause would be valid and enforceable.

### 2. The Arbitration Clause Does Not Waive Federal Rights or Preclude the Arbitration of Federal Claims

The United States Supreme Court has only articulated two potential bases for finding a prospective waiver of a party's right to pursue federal statutory remedies: (1) where "a provision in an arbitration agreement **_forbid[s]_** the assertion of certain statutory rights" and (2) where "filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013) (dictum) (emphasis added). To date, the United States Supreme Court has consistently "declined to apply [the effective vindication exception] to invalidate an arbitration agreement." *Id*. at 235. The Second Circuit has applied the prospective waiver doctrine to deny the enforcement of arbitration agreements that waived a party's right to pursue federal statutory remedies. *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126-28 (2d Cir. 2019), *petition for cert. filed, sub nom. Sequoia Capital Operations, LLC v. Gingras*, No. 19-331 (U.S. Sept. 11, 2019). However, *Gingras* is inapplicable here because the BlueChip's loan agreements do not renounce the application of federal law. Rather, the agreements repeatedly and expressly confirm that federal law is applicable.

In *Gingras*, the loan agreements provided that that they would be governed by the laws of the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, but also stated that "no other state or *federal law or regulation shall apply to this Agreement, its enforcement or interpretation*." *Id*. at 117-18, 127 n.4 (emphasis added). Relying upon authorities prohibiting the waiver of *federal* statutory rights in arbitration agreements, the Court found that the agreements unenforceable because they "disclaim[ed] the application of state and *federal* law,"

9

"appear[ed] to disallow claims brought under *federal* and state law," and "appear[ed] to wholly foreclose [borrowers] from vindicating rights granted by *federal* and state law" *Id*. at 127.

The Second Circuit relied on and agreed with the Fourth Circuit's ruling in *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 674 (4th Cir. 2016). In *Hayes*, the Fourth Circuit refused to enforce an arbitration agreement on the grounds that it prohibited the arbitrator from applying *federal* law. 811 F.3d at 673-75. The loan agreement provided that it would be governed by the law of the Cheyenne River Sioux Tribe, but also prohibited the application of any "state *or federal* law or regulation." *Id.* at 669-70 (emphasis added).[4] Relying upon authorities prohibiting the waiver of *federal* statutory rights in arbitration agreements, the Court found that the "arbitration agreement fails for the fundamental reason that it purports to renounce wholesale the application of any *federal* law to the plaintiffs' federal claims." *Id.* at 673-75 (emphasis added).[5] The Court explained:

> [P]arties are free within bounds to use a choice of law clause in an arbitration agreement to select which local law will govern the arbitration. These provisions often bring a welcome measure of predictability and thus efficiency to the dispute

---

[4] The two choice-of-law provisions in *Hayes* read in full as follows:

> **This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation.** By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and that *no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation*.
>
> Neither this Agreement nor Lender is subject to the laws of any state of the United States of America. By executing this Agreement, you hereby expressly agree that this Agreement is executed and performed solely within the exterior boundaries of the Cheyenne River Sioux Reservation, a sovereign Native American Tribal Nation. You also expressly agree that this Agreement shall be subject to and construed in accordance only with the provisions of the laws of the Cheyenne River Sioux Tribe, and that no United States state *or federal* law applies to this Agreement.

*Id.* (bolding in original, italics and underlining added).

[5] Although the Court also discussed the fact that the agreement required arbitration in a non-existent tribal forum, it did not rule on that basis. *See id.* at 672-74.

10

>resolution process.  But a party may not underhandedly convert a choice of law clause into a choice of no law clause – <u>it may not flatly and categorically renounce the application of the *federal* statutes to which it is and must remain subject.</u>

*Id.* at 675 (citations omitted, emphasis added).

Here, there are no such disclaimers.  The Loan Agreements have materially different language from those in *Gingras* and *Hayes*.  The Loan Agreements' choice-of-law provision states:  "By signing this Loan Agreement, you agree that the laws of the Tribe will apply to the Loan Agreement, and understand that United States *state* law does not apply to the Loan Agreement in any way."  (Spratt Decl., Ex. A-4 (emphasis added))[6]  The Loan Agreements do not expressly prohibit the application of federal law.  Rather, they require application of tribal law rather than *state* law.  It is fundamental that a choice-of-law provision selecting the law of a particular state does not preclude the application of federal law.  *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982) ("the incorporation of state law does not signify the inapplicability of federal law, for 'a fundamental principle in our system of complex national polity' mandates that 'the Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution.'") (quoting *Hauenstein v. Lynham*, 100 U.S. 483, 490, 25 L. Ed. 628, 631 (1879)); *World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co.*, 783 F.3d 507, 521 (4th Cir. 2015) ("A choice-of-law provision directing us to the laws of Florida thus encompasses federal statutory law, including the FMLA."); *Brown v. Investors Mortg. Co.*, 121 F.3d 472, 476 (9th Cir. 1997) ("The fact that the parties chose to apply the laws of Washington, rather than the laws of another state, does not mean the parties decided that federal law should not apply."); *Sage*

---

[6] Use of the term "United States state law" to refer to state law is not unusual.  *See, e.g., Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1380 (Fed. Cir. 2010) ("There remains the question of which United States state law applies to the question of successor liability").

*Popovich, Inc. v. Colt Int'l, Inc.*, 588 F. Supp. 2d 913, 917 (N.D. Ind. 2008) ("Although the Arbitration Agreement does state that Texas substantive law governs the arbitration, this provision does not preclude the application of federal law to the arbitration of Plaintiff's RICO claim.") (citations omitted); *Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522 JFB GRB, 2014 WL 3013294, at *7 (E.D.N.Y. July 3, 2014) (rejecting prospective waiver argument because a "Georgia choice-of-law provision does not waive plaintiff's federal statutory rights"). That the Loan Agreements select tribal law, rather than the law of a state, does not change this result. *See U.S. Use of Mackey v. Coxe*, 59 U.S. (18 How.) 100, 103, 15 L. Ed. 299 (1856); *Baker v. John*, 982 P.2d 738, 764 (Alaska 1999). Moreover, the Loan Agreements repeatedly acknowledge and seek to comply with obligations under federal law. (*See, e.g.*, Spratt Decl., Ex. A-1 (referring to applicable federal law); A-3 (providing federal Truth-in-Lending Act disclosures); A-5 (stating that the FAA governs); A-8 (providing Fair Lending Policy Statement pursuant to "applicable United States federal law" and referencing borrower's ability to exercise any right "under the Consumer Credit Protection Act"[7]); A-9 (requiring construction consistent with sections of the federal Internal Revenue Code and associated Treasury regulations and providing the Military Annual Percentage Rate pursuant to the Military Lending Act)) Since the Loan Agreements do not expressly renounce the application of federal law and the Loan Agreements contain several provisions confirming that federal law applies, they cannot properly be construed to prohibit the application of federal law.

---

[7] The federal Consumer Credit Protection Act includes the Truth in Lending Act, Fair Credit Billing Act, Consumer Leasing Act, Credit Repair Organizations Act, Fair Credit Reporting Act, Equal Credit Opportunity Act, Electronic Funds Transfer Act, and Fair Debt Collection Practices Act. *See* 15 U.S. Code, Ch. 41. Furthermore, these statutes and others are adopted as tribal law under the current Tribal Lending Code. *See* AA, Ex. C-4 (defining "Tribal Consumer Protection Laws").

### 3. Plaintiffs' Claims Fall Squarely Within The Arbitration Clause

Where the parties have entered into an arbitration agreement, there is a presumption that any dispute between them falls within its scope. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. In light of this presumption, courts must "construe arbitration clauses as broadly as possible." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citations and quotation omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985). Indeed, "[a]rbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *McMahan Secs. Co. L.P.*, 35 F.3d at 88; *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). Where the clause is broad, as it is here, there is a heightened presumption of arbitrability such that, "[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)). It is well-settled that RICO claims may be arbitrated. *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 242, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987) (finding RICO claim was subject to arbitration where contract required arbitration of "any controversy arising out of or relating to my accounts" and noting, plaintiffs "may effectively vindicate their RICO claim in an arbitral forum"); *PacifiCare Health Sys. v. Book*, 538 U.S. 401, 406-07, 123 S. Ct. 1531, 155 L. Ed. 2d 578 (2003) (holding that RICO claim must be arbitrated and arbitrator is to determine whether contractual damages limitation is enforceable); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1366 (2d Cir. 1993) (affirming order compelling arbitration of claims under RICO and the

13

Securities Acts).

Here, the Arbitration Clause in Plaintiffs' loan agreements clearly covers their claims. Plaintiffs agreed to arbitrate "all Disputes involving the parties," including, among other things: (1) "all claims even indirectly related to [their] application and agreements with us"; (2) "all past agreements"; and (3) "extensions, renewals, refinancings, or payment plans." (Spratt Decl., Ex. A-5). This language is unequivocal and all-encompassing, and clearly includes all of Plaintiffs' claims relating to the enforceability and legality of their loan agreements with BlueChip. *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 74 (2d Cir. 1997) (describing as broad a clause applying to "all disputes between the parties"); *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 267-69 (4th Cir. 2011) (holding that an "arbitration clause applying to 'any dispute' between the parties" encompassed all disputes, past or present, between the parties); *see also Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000) (explaining that by using similarly inclusive language, "any dispute between them or claim by either against the other," the parties "agreed to arbitrate any and all claims against each other, with no exceptions").

Plaintiffs' claims plainly are covered by the Arbitration Clause. Their claims are premised on the allegation that the loans they received from BlueChip were usurious and otherwise actionable under the laws of their respective states, and that these purported violations give rise to a RICO claim. (*See, e.g.*, Compl. ¶ 100). Plaintiffs' claims not only arise out of the loan agreements, but they only exist because of the loan agreements. (*See, e.g.*, *id.*, ¶ 121 (alleging that "BlueChip's loan agreements violated Fla. Stat. § 516.02 because they contained interest rates greater than 18%.")) But for Plaintiffs' loan agreements with BlueChip, their claims would not have arisen. Accordingly, Plaintiffs' claims clearly fall within the Arbitration

14

Clause's broad scope. *See JLM Indus., Inc.*, 387 F.3d at 172 ("if the allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them.") (quotations omitted).

**B.    Plaintiffs' Claims Must Proceed To Arbitration On An Individual Basis**

As confirmed in *Concepcion*, the Court must enforce the Arbitration Clause as written, including its clear language requiring arbitration on an individual basis. The "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Concepcion,* 563 U.S. at 344 (citations omitted). Thus, "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes." *Id.*; *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 683, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) ("Underscoring the consensual nature of private dispute resolution . . . parties are 'generally free to structure their arbitration agreements as they see fit.'") (citations omitted). "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *Concepcion*, 563 U.S. at 351; *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal quotation marks and citation omitted); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S. Ct. 754, 762 (2002) ("[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement.").

By agreeing to the terms of the Loan Agreements and accepting loan proceeds from BlueChip, Plaintiffs agreed that they waived their right "to be in a class action, as a representative and a member," and to "have representative claims," agreeing that "[o]nly individual arbitration will solve Disputes." (Spratt Decl., Ex. A-5). This language unequivocally

15

demonstrates the parties' intent to arbitrate claims only on an individual basis. Because "the FAA requires courts to honor parties' expectations," arbitration should be compelled on an individual basis. *See Concepcion*, 563 U.S. at 351; *Stolt-Nielsen*, 559 U.S. at 687 (class arbitration may only be ordered when the parties expressly agree to class arbitration).

C. **This Action Should Be Stayed Pending Completion Of The Arbitration**

Once a court becomes satisfied that a case should be referred to arbitration pursuant to agreement, on application by one of the parties, a district court must stay proceedings pending arbitration. *Katz v. Cellco P'ship*, 794 F.3d 341, 345-47 (2d Cir. 2015); 9 U.S.C. § 3. Here, the claims at issue are indisputably arbitrable, so this action should be stayed.

D. **BlueChip Reserves Its Sovereign Immunity**

A sovereign can assert immunity at any time, even on appeal. *Brown v. Halpin*, 885 F.3d 111, 118 (2d Cir. 2018). A sovereign immunity defense must be entertained by the court so long as the case is in the preliminary stages and no extensive discovery has taken place. *See McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014). Although this dispute must be arbitrated for the reasons set forth above, BlueChip hereby notifies the Court and the parties that it is an arm of the Tribe, and therefore entitled to sovereign immunity. BlueChip does not waive its sovereign immunity defense by filing this motion.

## IV. CONCLUSION

For the foregoing reasons, the Court should enter an Order compelling Plaintiffs to arbitrate this dispute on an individual, non-class basis, and staying the pending completion of the arbitration.

DATED: December 16, 2019

Respectfully submitted,

By: /s/ Stephen G. Walko
Stephen G. Walko, Esq. (CT26744)
Andrea C. Sisca, Esq. (CT29281)
IVEY, BARNUM & O'MARA, LLC
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-6000
Facsimile: (203) 661-9462
Email: swalko@ibolaw.com

Scott M. Pearson, Esq., *pro hac vice pending*
Kay Fitz-Patrick, Esq., *pro hac vice pending*
MANATT, PHELPS & PHILLIPS, LLP
11355 W. Olympic Blvd
Los Angeles, CA 90064
Telephone: (310) 312-4283
Facsimile: (310) 312-4224
Email: spearson@manatt.com
Email: kfitz-patrick@manatt.com

*Attorneys for defendant*
*BlueChip Financial d/b/a Spotloan*

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2019, a copy of the foregoing was filed electronically and served by U.S. mail, first class postage prepaid on any party unable to accept electronic filing. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to any party unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

          */s/ Stephen G. Walko*
          Stephen G. Walko, Esq. (CT26744)